UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                                                                                  Case No. 3:10-bk-7437-PMG

Jimmy Webb,
a/k/a Jimmy Reid Webb

Carol Webb,
a/k/a Carol Sue Webb,

                                    Debtors.                     Chapter 13

**ORDER ON ACTING UNITED STATES TRUSTEE'S MOTION TO REOPEN CASE, CONVERT CASE TO CHAPTER 7, AND FOR APPOINTMENT OF A TRUSTEE**

**THIS CASE** came before the Court for hearing to consider the Acting United States Trustee's Motion to Reopen Case, Convert Case to Chapter 7, and for Appointment of a Trustee. (Doc. 62).

The Debtors filed their Chapter 13 petition on August 25, 2010. The Debtors' Chapter 13 Plan was confirmed on December 3, 2010, the Discharge of Debtors after Completion of Chapter 13 Plan was entered on August 1, 2014, and the case was closed on September 23, 2014.

On December 14, 2017, the United States Trustee (UST) filed a Motion to reopen and convert the Chapter 13 case to Chapter 7, in order to permit a Chapter 7 Trustee to administer a products liability claim that was property of the estate, but that was settled after the bankruptcy case was closed.

1

Under §1329 of the Bankruptcy Code, a confirmed Chapter 13 Plan cannot be modified after completion of payments under the Plan, and cannot be modified to extend the Plan for more than five years. In this case, therefore, the Bankruptcy Code does not permit a modification of the Debtors' Plan to provide for the distribution of any proceeds of the products liability claim.

In his Motion, the UST asks the Court to convert the case to a case under Chapter 7, so that a Chapter 7 trustee can administer the proceeds of the claim. Section 1307(c) of the Bankruptcy Code provides that a Chapter 13 case can be converted to a case under Chapter 7 for "cause."

Under the circumstances of this case, the Court finds that "cause" does not exist to convert the case, because (1) a Chapter 7 Trustee's administration of the products liability claim would amount to a Plan modification that is expressly prohibited by §1329 of the Bankruptcy Code, and also because (2) the conversion would represent an untimely revocation of the Debtors' discharge and confirmation order under §1328(e) and §1330(a) of the Bankruptcy Code.

For these reasons, the UST's Motion to reopen and convert the Debtors' Chapter 13 case should be denied.

**Background**

In December of 2006, Carol Webb received a vaginal mesh implant during a surgical procedure. (Exhibit to Doc. 66, Affidavit of Carol Webb, ¶ 3).

On August 25, 2010, the Debtors filed a petition under Chapter 13 of the Bankruptcy Code. As of the petition date, Carol Webb was not experiencing any medical complications as a result of the implant (Webb Affidavit, ¶ 4), and the Debtors' bankruptcy schedules did not list any potential claim arising from the implant.

On December 3, 2010, the Court entered an Order Confirming the Debtors' Chapter 13 Plan. (Doc. 27).

In October of 2011, Carol Webb responded to a television commercial by inquiring about potential claims against the manufacturer of faulty implants. (Webb Affidavit, ¶¶ 5-6).

In April of 2012, Carol Webb was informed that she had received the type of implant that was involved in the products liability claim. (Webb Affidavit, ¶ 10).

In March of 2013, Carol Webb underwent a surgical procedure that unsuccessfully attempted to repair the implant. (Webb Affidavit, ¶ 14). During the same month, Carol Webb's attorney filed a claim in the products liability class action case. (Webb Affidavit, ¶ 15).

The Debtors' bankruptcy schedules were not amended to disclose the filing of the products liability claim. (Doc. 66, ¶ 5).

On July 2, 2014, the Chapter 13 Trustee filed a Notice of Completion of Chapter 13 Plan in the Debtors' bankruptcy case. (Doc. 53).

On August 1, 2014, the Court entered a Discharge of Debtors after Completion of Chapter 13 Plan (Doc. 58), and the Chapter 13 case was closed on September 23, 2014.

In March of 2017, Carol Webb was informed that her products liability claim had been settled for the gross amount of $40,000.00. The net amount of the award to Carol Webb is approximately $19,000.00. (Webb Affidavit, ¶¶ 19, 22).

On November 1, 2017, an entity known as The Settlement Alliance sent a letter to the Chapter 13 Trustee which stated that Carol Webb had received an award in the products liability case. (Exhibit to Doc. 62).

On December 14, 2017, the UST filed the Motion to Reopen Case, Convert Case to Chapter 7, and for Appointment of a Trustee that is currently before the Court. (Doc. 62).

### Discussion

In the Motion, the UST asserts that the products liability claim is an asset of the Debtors' Chapter 13 estate under §1306(a) and §554(d) of the Bankruptcy Code, and that the Court should reopen the case and convert it to a case under Chapter 7 to permit the administration of the asset by a Chapter 7 Trustee. (Doc. 62, p. 1).

### A. Property of the Debtors or the Chapter 13 estate

Specifically, the UST contends that the claim initially became property of the estate under either §541(a) or §1306(a) of the Bankruptcy Code. (Doc. 62, p. 4).

In other words, if the claim accrued prepetition when Carol Webb received the implant, then the claim was property of the estate under §541(a), which provides that estate property includes all legal or equitable interests as of the commencement of the case. 11 U.S.C. §541(a)(1). And if the claim accrued post-petition when Carol Webb learned of her potential injury, then the claim became property of the estate under §1306(a), which provides that property of a Chapter 13 estate includes property that a debtor acquires after the commencement of the case. 11 U.S.C. §1306(a)(1).

The UST also contends that the claim was preserved as property of the estate under §554(d), which provides that estate property that was neither abandoned nor administered in a bankruptcy case "remains property of the estate." 11 U.S.C. §554(d). (Doc. 62, pp. 4-5).

The Debtors acknowledge that the claim initially "became part of the bankruptcy estate" under either §541(a) of §1306(a). (Doc. 66, ¶ 14). The Debtors assert, however, that the claim re-vested in

4

them when their Chapter 13 Plan was confirmed pursuant to §1327(b), which provides that the "confirmation of a plan vests all of the property of the estate in the debtor." 11 U.S.C. §1327(b).

According to the Debtors, "while the filing of the petition for bankruptcy places all of the property of the debtor in the control of the bankruptcy court, the plan upon confirmation returns so much of that property to the debtor's control as is not necessary to the fulfillment of the plan." Telfair v. First Union Mortgage Corporation, 216 F.3d. 1333, 1340 (11th Cir. 2000)(citing In re Heath, 115 F.3d 521, 524 (7th Cir. 1997)).

In this case, the Debtors' Chapter 13 Plan provided that property of the estate re-vested in the Debtors upon confirmation, the Plan was confirmed on December 3, 2010, and payments under the Plan were completed in 2014. (Docs. 21, 27). Consequently, the Debtors contend that the proceeds of the products liability claim were not necessary for the fulfillment of their Chapter 13 plan payments, and the claim re-vested in them after confirmation. (Doc. 66).

Regardless of whether the products liability claim is property of the estate (as asserted by the UST) or property of the Debtors (as asserted by the Debtors), the Court finds that the case should not be reopened and converted to administer the asset pursuant to §1307(c) of the Bankruptcy Code.

**B. No "cause" to convert the Chapter 13 case to Chapter 7 under §1307(c)**

Section 1307(c) of the Bankruptcy Code provides that the Court may convert a chapter 13 case to a case under Chapter 7 "for cause," upon a motion by the United States trustee. 11 U.S.C. §1307(c). The section provides a non-exhaustive list of factors that may be considered to determine whether "cause" exists in a particular case, but the decision ultimately is within the discretion of the Court. In re Monteleone, 553 B.R. 288, 292 (Bankr. W.D. Pa. 2016); In re Demeza, 567 B.R. 473, 477 (Bankr. M.D. Pa. 2017).

In this case, the Court finds that "cause" does not exist to convert the closed Chapter 13 case to a case under Chapter 7 for at least two reasons.

**1. Section 1329**

First, the sole purpose of the proposed conversion is to appoint a Chapter 7 Trustee to collect and distribute the proceeds of the products liability claim, but a Chapter 7 Trustee's administration of the claim would amount to a Plan modification that is expressly prohibited by §1329 of the Bankruptcy Code.

Section 1329 provides in part:

> **11 U.S.C. §1329. Modification of plan after confirmation**
>
> (a) At any time after confirmation of the plan <u>but before the completion of payments under such plan</u>, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, . . . .
>
> . . .
>
> (c) A plan modified under this section may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but <u>the court may not approve a period that expires after five years after such time</u>.

11 U.S.C. §1329(a)(Emphasis supplied). Under these provisions, a Chapter 13 plan cannot be modified after the completion of payments under the plan, and cannot be modified to provide for payments that extend the plan period beyond five years. See In re D'Antignac, 2013 WL 1084214, at 5 (Bankr. S.D. Ga.)(The Chapter 13 case could not be reopened to administer assets, because a Chapter 13 plan cannot provide for payments beyond five years, and because the plan cannot be modified after the debtor has completed the plan payments.).

The purpose of these time limitations is to ensure that Chapter 13 plans do not last for an unidentifiable period, and do not frustrate a debtor's fresh start. In re Ingram, 531 B.R. 121, 125 (Bankr. D.S.C. 2015)(A motion to reopen a Chapter 13 case was denied, because the time limitations of §1329 prohibited the inclusion of an omitted asset in a modified plan.).

In In re Powers, 435 B.R. 385 (Bankr. N.D. Tex. 2010), the Court considered §1329's statutory limits on plan modification in a situation that is factually similar to the case before the Court. In Powers, the debtor learned of a potential products liability claim after confirmation of his plan, but during his Chapter 13 plan period. Approximately four years after completing his Chapter 13 plan and receiving a discharge, the debtor was notified that the claim was settled. Procedurally, the matter was before the Court on a motion to determine whether the products liability claim was property of the debtor's bankruptcy estate. In re Powers, 435 B.R. at 386-87.

In evaluating the motion, the Court considered the interplay of §1306, §1327 (including the Eleventh Circuit's decision in Telfair), and §1329, and concluded:

> If the latter described property [property acquired by the debtor after confirmation] may potentially enhance the dividend to creditors, then the debtor, the trustee, or an unsecured creditor can move under section 1329 to modify the debtor's chapter 13 plan to increase the debtor's payments, See 11 U.S.C. §1329. <u>But the debtors here have completed their payments and have long since received their discharge. Section 1329 provides that a modification may be proposed "after confirmation . . . but before the completion of payments. . . ."</u> This case was closed; the issue arose after the debtors moved to reopen the case.

In re Powers, 435 B.R. at 389(Emphasis supplied). Consequently, the Court determined that the proceeds of the debtor's products liability claim should be remitted to the debtor, because the Chapter 13 plan could not be modified to provide for distribution of the award. Id. at 389-90.

7

In this case, Carol Webb was not experiencing any medical difficulties from her mesh implant as of the petition date, and the Debtors acknowledge that the potential claim was not disclosed on their initial bankruptcy schedules.

The Debtors' Chapter 13 Plan was confirmed on December 3, 2010. The Plan as confirmed was a four-year plan in which the Debtors were required to pay the sum of $647.00 per month in the first year, and the sum of $552.00 per month in the following three years of the repayment period. (Doc. 27).

Approximately ten months after the Plan was confirmed, in October of 2011, Carol Webb responded to a television commercial regarding claims arising from mesh implants, even though she still was not suffering from any complications from her implant. (Webb Affidavit, ¶ 5).

In April of 2012, approximately 17 months after the Plan was confirmed and while the Debtors were making their Plan payments, Carol Webb was informed that she qualified for participation in the class action lawsuit based on the mesh implants. (Webb Affidavit, ¶ 10). A claim was filed on her behalf in the class action in March of 2013. (Webb Affidavit, ¶ 15).

On July 2, 2014, the Chapter 13 Trustee filed a Notice of Completion of Chapter 13 Plan in the Debtors' bankruptcy case. (Doc. 53). The Debtors received their discharge on August 1, 2014, and the case was closed on September 23, 2014. (Doc. 58).

In March of 2017, Carol Webb was informed that the products liability claim was settled for the gross amount of $40,000.00. (Webb Affidavit, ¶ 19).

The award was made more than six years after the first payments were due under the Debtors' Chapter 13 Plan, and more than two and one-half years after the Debtors completed their payments under the Plan. Section 1329 expressly prohibits a modification of the Debtors' confirmed Plan to

provide for distribution of any proceeds of the award, because such a modification would occur after completion of the Plan payments, and would effectively extend the Plan period beyond five years.

Absent the ability to modify the Debtors' Plan, the UST asks the Court to convert the case for the sole purpose of enabling a Chapter 7 Trustee to collect and distribute the proceeds of the award. The proposed conversion is designed to achieve a result that is specifically prohibited by §1329. Additionally, the proposed conversion is contrary to §1329's policy of ensuring that Chapter 13 debtors receive their fresh start free of the burden of cases that may last indefinitely. In re Ingram, 531 B.R. at 125.

Under these circumstances, "cause" does not exist to convert the case under §1307(c) of the Bankruptcy Code, and the UST's Motion should be denied.

### 2. Section 1328(e) and §1330(a)

Second, "cause" does not exist to convert this closed Chapter 13 case, because such a conversion would represent an untimely revocation of the Debtors' discharge and confirmation order under §1328(e) and §1330(a) of the Bankruptcy Code.

Section 1328(e) provides:

**11 U.S.C. §1328. Discharge**

. . .

(e) On request of a party in interest <u>before one year after a discharge under this section</u> is granted, and after notice and hearing, the court may revoke such discharge only if—

    (1) such discharge was obtained by the debtor through fraud; and

    (2) the requesting party did not know of such fraud until after such discharge was granted.

11 U.S.C. §1328(e)(Emphasis supplied). And §1330(a) provides:

9

**11 U.S.C. §1330. Revocation of an order of confirmation**

(a) On request of a party in interest <u>at any time within 180 days after the date of the entry of an order of confirmation under section 1325 of this title</u>, and after notice and a hearing, the court may revoke such order if such order was procured by fraud.

11 U.S.C. §1330(a)(Emphasis supplied). The time limits contained in §1328 and §1330 reflect a strong policy favoring finality in the conclusion of Chapter 13 cases. In re Kelly, 358 B.R. 443, 447 (Bankr. M.D. Fla. 2006); In re Valenti, 310 B.R. 138, 145, 150 (Bankr. 9th BAP 2004).

In view of this policy favoring finality, as implemented in the specific statutory deadlines, Courts generally have not allowed parties to evade the time limits contained in §1328 and §1330 by invoking other sections of the Bankruptcy Code.

In In re Kelly, 358 B.R. 443 (Bankr. M.D. Fla. 2006), for example, the United States Trustee filed a Motion to Convert a Chapter 13 Case to administer an asset that had not been disclosed by the debtors. The Motion was filed after the Chapter 13 plan payments were completed and the discharge was entered, and after the case had been closed for more than a year. In re Kelly, 358 B.R. at 445. The Court denied the Motion to convert the case:

> The Code provides specific remedies for dealing with a Chapter 13 debtor's fraud, which include the revocation of plan confirmation and the revocation of discharge. Time limits for invoking these remedies have been clearly established and cannot be expanded in contravention of the plain language of the Code. Indeed, were the Court to use its inherent powers to order the conversion for administration of fraudulently concealed assets in this case, the time limit in Section 1330 would be rendered meaningless.

In re Kelly, 358 B.R. at 448(citing In re Thompson, 344 B.R. 461 (Bankr. W.D. Va. 2004), for the principle that parties should not be permitted to "get around Section 1330(a)" by attempting to convert a Chapter 13 case pursuant to other sections of the Bankruptcy Code.). See also In re Valenti, 310 B.R. 138, 152 (Bankr. 9th Cir. BAP 2004)(Certain creditors alleged that the debtors had concealed

10

information during their Chapter 13 case, and the Court held that the creditors could not evade the 180-day time limit of for revocation of confirmation by seeking to convert the case after the deadline had passed.).

In this case, the order confirming the Debtors' Plan was entered on December 3, 2010, and the Debtors received their discharge on August 1, 2014. The UST filed his Motion to convert the case on December 14, 2017, more than two years after the deadline to file a motion to revoke the Debtors' discharge or confirmation order.

The time limits of §1328(e) and §1330(a) bar the revocation of the confirmation order and discharge to allow the administration of the products liability claim in the Chapter 13 case. Consequently, the UST may not evade those time limits by seeking to convert the case to a case under Chapter 7 to achieve the same purpose.

The Debtors' failure to list the claim on their bankruptcy schedules does not produce a different outcome. The Debtors acknowledge that they did not disclose the products liability claim during their Chapter 13 case, but contend that the nondisclosure was unintentional. (Doc. 66, ¶ 5; Webb Affidavit, ¶ 23).

According to Carol Webb, she did not learn that she held a viable claim until at least April of 2012, approximately one and one-half years after the bankruptcy case was filed and the Chapter 13 Plan was confirmed. (Webb Affidavit, ¶10). Carol Webb also asserts that she "was always under the impression that any claim I had as a result of the class action would not result in any money for a very long time," possibly as long as twenty years. (Webb Affidavit, ¶¶ 7, 23). After the settlement was awarded, Carol Webb disclosed the bankruptcy case in the settlement process and asserts that she

authorized the settlement attorney to notify the Chapter 13 Trustee of the award. (Webb Affidavit, ¶ 20).

The UST does not allege that the Debtors' nondisclosure of the claim in their Chapter 13 case was fraudulent or that the Debtors acted in bad faith. Even if the Debtors' failure to disclose the claim was intentional, however, the UST would nevertheless be barred by the time limits contained in §1328(e) and §1330(a) from revoking their discharge or the confirmation order. See 11 U.S.C. §§1328(e), 1330(a)(The time limits apply where the discharge and confirmation order were obtained by fraud.).

Under these circumstances, the Court finds that "cause" does not exist to convert the case under §1307(c) of the Bankruptcy Code, because the conversion would represent an untimely revocation of the Debtors' discharge and confirmation order.

## Conclusion

Under §1329 of the Bankruptcy Code, a confirmed Chapter 13 Plan cannot be modified after completion of payments under the Plan, and cannot be modified to extend the Plan period for more than five years. In this case, therefore, the Bankruptcy Code does not permit a modification of the Debtors' Plan to provide for the distribution of any proceeds of a products liability claim that was settled after the bankruptcy case was completed and closed.

In his Motion, the UST asks the Court to convert the case to a case under Chapter 7, so that a Chapter 7 Trustee can administer the proceeds of the claim. Section 1307(c) of the Bankruptcy Code provides that a Chapter 13 case can be converted to a case under Chapter 7 for "cause."

Under the circumstances of this case, the Court finds that "cause" does not exist to convert the case, because (1) a Chapter 7 Trustee's administration of the products liability claim would amount to a Plan modification that is expressly prohibited by §1329 of the Bankruptcy Code, and also because (2)

the conversion would represent an untimely revocation of the Debtors' discharge and confirmation order under §1328(e) and §1330(a) of the Bankruptcy Code.

Accordingly:

**IT IS ORDERED** that the Acting United States Trustee's Motion to Reopen Case, Convert Case to Chapter 7, and for Appointment of a Trustee is denied.

**DATED** this 2 day of March, 2018.

                **BY THE COURT**

                _____
                PAUL M. GLENN
                United States Bankruptcy Judge